IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SIRRON BENSON, | § | |
| | § | No. 88, 2017 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | Cr. ID 1107007485 (N) |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: September 15, 2017
Decided: November 27, 2017

Before **STRINE**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **O R D E R**

This 27th day of November 2017, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) The defendant-appellant, Sirron Benson, appeals from the Superior Court's denial of his first motion for postconviction relief. The sole issue that Benson raises in his opening brief is a claim that his trial counsel was ineffective for arguing lesser-included offenses to the jury in his closing argument. We find no merit to this issue. Thus, we affirm the Superior Court's denial of postconviction relief.

(2) The record reflects that Benson was arrested in 2011 and charged with first degree murder and a firearm offense in the shooting death of Braheem Curtis.

A five-day jury trial was held in April 2013. The State presented evidence that Benson and Curtis got into an argument on the evening of July 3, 2011 about Curtis shooting off fireworks in the neighborhood of Ninth and Kirkwood Streets in Wilmington. A witness overheard Benson threaten to get his gun if Curtis did not stop with the fireworks. Benson then walked toward his house on Ninth Street and returned shortly thereafter carrying a gun. Benson fired the gun once at Curtis from across the street. Curtis fell to the ground. Benson continued walking toward him and, without breaking stride, fired a second shot as Curtis lay on the ground.

(3) A neighbor testified that a man fitting Benson's description ran by her house and threw an object that looked like a gun onto her roof. Police recovered a .45 caliber revolver from the roof, which was tested later and found to have DNA from four different contributors. One of the contributor's DNA was consistent with Benson's. Two .45 caliber bullets were recovered from Curtis' body but were too badly damaged to be linked conclusively to the recovered weapon. After the shooting, the State presented evidence that Benson turned off his cell phone and fled Wilmington. Benson was arrested several weeks later in Dover.

(4) During closing arguments, Benson's counsel argued primarily that the State had not met its burden of proving that Benson was the shooter. Defense counsel argued in detail to the jury why the State's evidence of Benson's identification was either not reliable, not credible, or weak. In the alternative,

2

however, defense counsel told the jury that "even if you do think the State met the burden of [proving] identification, your work may not be done as you deliberate."[1] Defense counsel went on to argue that the State had not met its burden of proving intent in order to prove the crime of first degree murder. Defense counsel argued that, given the circumstances of the shooting and the impulsiveness of twenty-year-old youths like Benson, the jury should consider the lesser-included offenses of criminally negligent homicide, manslaughter, and second degree murder.

(5) The Superior Court's instructions to the jury included instructions for first degree murder as well as the lesser-included offenses. The jury convicted Benson of first degree murder and the firearm offense. The Superior Court sentenced Benson to life imprisonment plus a term of twenty years. This Court affirmed his convictions and sentence on direct appeal.[2] In January 2015, Benson filed a motion for postconviction relief. After considering Benson's postconviction claims, the affidavits and supplemental affidavits of his trial counsel and appellate counsel, and his postconviction counsel's motion to withdraw, the Superior Court granted counsel's motion to withdraw and denied Benson's motion for postconviction relief on February 10, 2017. This appeal followed.

---

[1] Trial Tr., April 16, 2013, at 20.
[2] *Benson v. State*, 105 A.3d 979 (Del. 2014).

3

(6)     Although Benson raised several issues in the motion he filed in the Superior Court, he raises only one issue in his opening brief on appeal.[3]  He contends that his trial counsel was ineffective for arguing during closing that the jury should consider lesser-included offenses.  Benson contends that, by arguing for lesser-included offenses and suggesting that the shooting was the result of youthful impulsiveness, defense counsel essentially incriminated Benson and violated his right to be presumed innocent.

(7)     In reviewing a claim of ineffective assistance of counsel in a timely first postconviction proceeding, this Court applies the standard set forth in *Strickland v. Washington*.[4]  Under *Strickland*, a defendant must demonstrate that: (a) his trial counsel's conduct fell below an objective standard of reasonableness; and (b) there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different.[5]  There is a "strong presumption" that counsel's representation was professionally reasonable.[6]  In order to overcome this presumption, a defendant must show that his counsel's conduct was not part of a "sound trial strategy."[7]

---

[3] To the extent that Benson raised other issues in the motion he filed in the Superior Court, he has waived any right to further review of those claims on appeal by failing to argue those issues in his opening brief. *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993).

[4] 466 U.S. 668 (1984).

[5] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

[6] *Id.* at 689.

[7] *Redden v. State*, 150 A.3d 768, 773 (Del. 2016) (*citing Strickland v. Washington*, 466 U.S. at 689).

(8)     Benson argues that defense counsel's decision to argue lesser-included offenses to the jury was not part of a sound strategy and, instead, incriminated Benson.  We disagree.  Defense counsel made a lengthy argument to the jury pointing out all of the weaknesses in the State's case regarding the identification of Benson as the shooter.  The reality, though, was that the State's evidence supporting the identification of Benson as the shooter, though comprised in part of circumstantial evidence, was very strong and compelling when considered cumulatively.  Given the strength of the State's identification evidence, it was entirely reasonable for defense counsel to argue in the alternative that, if the jury found that Benson was the shooter, it should consider all of the circumstances of the shooting and conclude that the State had failed to prove the element of intent necessary for a first degree murder conviction.

(9)     Trial counsel was in a very difficult position.  Benson wished to contest that he shot Curtis when the evidence contradicting that position was overwhelming.  Trial counsel tried his best to argue that Benson should be acquitted and did not concede that Benson shot Curtis.  Counsel would have been subject to much more criticism if he had not sought the instructions on lesser included offenses and argued to the jury that, if it accepted the State's basic version of events, it should be merciful in evaluating Benson's state of mind.

(10)   Defense counsel has the authority to manage the day-to-day conduct of the defense strategy, including making decisions about when and whether to object, which witnesses to call, and what defenses to develop.[8]  The decision to request a lesser-included offense instruction also is a matter of trial strategy that is "within the province of defense counsel rather than the defendant."[9]  By asking the jury to consider lesser-included offenses in this case, defense counsel made a reasonable, strategic argument that could have led to a lesser conviction and thus a lesser punishment for Benson than life imprisonment.  That counsel's strategy ultimately was not successful does not mean that the strategy was unreasonable or that counsel's performance was constitutionally ineffective.  Moreover, we cannot discern any prejudice to Benson because the evidence that Benson was the shooter was so one-sided that there is no basis to conclude that a different closing argument strategy would have created a reasonable probability of a different outcome.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice

---

[8] *Zimmerman v. State*, 2010 WL 546971, *2 (Del. Feb. 16, 2010).
[9] *Moore v. State*, 2003 WL 1987899, *1 (Del. Apr. 28, 2003).